IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON ZANGARA** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO.  23-3928 |
| | : | |
| **NATIONAL BOARD OF MEDICAL EXAMINERS** | : | |
| | : | |

<u>**MEMORANDUM**</u>

**MURPHY, J.**                                                                                              **September 4, 2024**

Jason Zangara is a medical student with disabilities who says he failed to pass multiple examinations administered by defendant National Board of Medical Examiners (NBME).  He argues that the way the NBME scores its exams is inherently discriminatory to people with disabilities.  According to Mr. Zangara's complaint, the NBME scores exams, in part, by looking at how prior test-takers fared, which he says wrongly compares those with disabilities to those without disabilities.  He invokes federal discrimination laws and implores us to require the NBME to focus on a test-taker's "own merit."

The Americans with Disabilities Act (ADA) has a provision for examinations like the NBME's.  And usually, individuals in Mr. Zangara's situation rely on that law to seek reasonable test-taking accommodations like extra time.  Mr. Zangara, however, seeks something different and more sweeping.  While Mr. Zangara undertook great effort to set out his views in writing and during a hearing, the ADA simply does not allow us to fundamentally re-shape medical licensing examinations or their grading procedures in the way he urges.  We will therefore dismiss Mr. Zangara's complaint with prejudice.  For the same reasons, we deny his request for a temporary restraining order or a preliminary injunction.

I.  **Background**[1]

Plaintiff Jason Zangara is a medical student at Caribbean Medical University. DI 51 ¶ 2. Mr. Zangara was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and learning disabilities. *Id*. ¶ 15.

Defendant National Board of Medical Examiners (NBME) develops and administers medical licensing examinations. *Id*. ¶¶ 1, 3. These exams include the United States Medical Licensing Examination (USMLE), a three-step examination required for medical licensure in the United States, as well as the Comprehensive Science Examinations and subject examinations. *Id*. ¶¶ 3.

Mr. Zangara "failed multiple attempts at multiple examinations administered and graded" by the NBME. *Id*. ¶ 50. He "attempted to study" for the Comprehensive Basic Science Examination (CBSE), but failed the self-assessment examinations, which are "interchangeable" with the CBSE. *Id*. ¶¶ 45, 51-52. He took the CBSE on March 27, 2022 and February 28, 2023. *Id*. ¶¶ 127, 152. Additionally, he took four subject examinations and did not pass them. *Id*. ¶¶ 88-89. Further, he "will take" the USMLE Step 1, Step 2, and Step 2 tests. *Id*. ¶¶ 677, 727, 777.

Mr. Zangara's exams "were scored using complex methods that were comparing his score to the scores of others who took the exam prior" and were not based on the "percentage of

---

[1] We draw these factual allegations from plaintiffs' amended complaint. DI 51. These are the facts as alleged by Mr. Zangara at the time he filed his amended complaint. We recognize that the NBME disputes many of Mr. Zangara's factual allegations and argues they are refuted by the documents Mr. Zangara filed with his amended complaint. DI 71 at 4-9. However, we are required to accept Mr. Zangara's allegations as true at this stage. *See Doe v. Princeton Univ*., 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc*., 542 F.3d 59, 64 (3d Cir. 2008)). Further, even assuming that all of the allegations in Mr. Zangara's complaint are true we find that he has not stated a claim upon which relief can be granted.

2

content mastered." *Id*. ¶ 53.  This method, in part, uses "norm groups" from a previous cohort of students to determine passing scores and will result in some examinees failing "irrespective of their performance." *Id*. ¶¶ 73-74, 83.  As a result, "[r]egardless of how many times [p]laintiff or any disabled person takes the exam they will be scored lower because . . . 'a clinical diagnosis of a learning disability is typically based upon a comparison between the individual and others in the general population." *Id*. ¶ 87 (quoting *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 258 (3d Cir. 2020)).

Mr. Zangara brings claims under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973, the Civil Rights Act of 1964 and 1991, the New Jersey Law Against Discrimination, and the New Jersey Civil Rights Act.[2]  *Id*. ¶¶ 10, 124.  In his amended complaint, Mr. Zangara seeks injunctive relief and a declaratory judgment requiring the NBME to score their exams "in a non discriminatory manner; based strictly and solely on the test candidates own merit . . . not basing passing or failing on a test candidates comparison to any current or prior testing candidate." *Id*. ¶¶ 834-35.  He also filed an "Application for Order to Show Cause / Temporary Restraining Order / Motion for Preliminary Injunction" to block NBME's alleged scoring methodology.  DI 77; DI 52; DI 53.[3]

---

[2] Mr. Zangara asserts eighty-six counts in his amended complaint.  DI 51 ¶¶ 125-834.  His counts apply these laws to different tests that the NBME either administered or will administer in the future.  *Id*.

[3] Mr. Zangara filed an "application to the court for the purpose of requesting an Order to Show Cause why a Preliminary Injunction Should Not Issue against Defendants" and also requested a Temporary Restraining Order in July of 2023.  DI 52; DI 53.  This case was then transferred to the Eastern District of Pennsylvania in October of 2023 and, as a result, Mr. Zangara's original motion was denied as moot.  DI 67.  After transfer, Mr. Zangara again moved for an "Application for Order to Show Cause / Temporary Restraining Order / Motion for Preliminary Injunction."  DI 77.  In this motion, Mr. Zangara asked us to consider the documents he previously filed at DI 51, DI 52, DI 53.  We will consider those documents.

3

Mr. Zangara's central legal argument is that the NBME is liable under the ADA[4] based on a disparate-impact theory. DI 59[5] at 23-32; DI 79[6] at 16-18. He argues that while disparate-

---

[4] Mr. Zangara's briefing focuses primarily on his ADA claim. DI 59; DI 79. For a variety of reasons, we find that Mr. Zangara's other claims are either independently not viable, or their success depends on the same arguments he advances in support of his ADA claim.

*Section 504 of the Rehabilitation Act*

The same standard governs claims under Section 504 of the Rehabilitation Act and the ADA. *See Katz v. Nat'l Bd. of Med. Exam'rs*, 751 F. App'x 231, 238 (3d Cir. 2018) ("We apply the same substantive standard to claims brought under the Rehabilitation Act and Title III of the ADA."); *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) ("Because the same standard govern both the Chambers' RA and ADA claims, we may address both claims in the same breath."). Mr. Zangara says as much in his briefing. *See* DI 59 at 14-15; DI 79 at 8 ("[Mr. Zangara] has not plead Defendants are independently liable under [S]ection 504, he has plead section 504 since the courts have ruled the liability is the same as under [T]itle III").

The NBME argues that Mr. Zangara's Section 504 Rehabilitation Act claims should also be dismissed because Mr. Zangara did not allege that the NBME received federal financial assistance, which is required for a Rehabilitation Act claim. DI 71 at 11-12. However, we need not assess this argument because we find that Mr. Zangara's Rehabilitation Act claim cannot proceed for the same reasons as his ADA claim cannot proceed. *See Ramsay v. Nat'l Bd. of Med. Exam'rs*, 2019 WL 7372508, at *7 n.6 (E.D. Pa. Dec. 31, 2019) (declining to address whether the NBME receives federal funds such that it is subject to § 504 of the Rehabilitation Act because "it is not necessary that we do so now given that the standards adopted by titles II and III of the ADA are generally the same as those required under the RHA").

*Federal Civil Rights Act*

Mr. Zangara's briefing most often references Title VII to argue we should apply Title VII's disparate impact framework to the ADA. *See* DI 59 at 23; DI 79 at 16. However, his complaint also lists independent claims under the Civil Rights Act of 1964 & 1991 with reference to 42 U.S.C. §§ 2000e - 2000e17, the statutory sections associated with Title VII. *See* DI 51 ¶¶ 1, 137, 162; *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 655 (2020). Therefore, we will assess whether Mr. Zangara can bring an independent claim under Title VII.

Title VII protects against discrimination on the basis of "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2. However, it does not include protection against disability discrimination. *See Patterson v. AFSCME # #£2456*, 320 F. App'x. 143, 147 (3d Cir. 2009) (explaining that disability is not a protected characteristic under Title VII); *Ruffin v. Bank of Am.*, 2014 WL 3828408, at *2 (D. Del. Aug. 1, 2014) ("Disability is not covered under Title VII, and a court must dismiss a disability discrimination suit brought under Title VII, even if it is

4

brought by a *pro se* plaintiff."); *Diep v. Southwark Metal Mfg. Co.*, 2001 WL 283146, at *2 (E.D. Pa. Mar. 19, 2001) ("Disability is not among the enumerated bases for a Title VII suit, and therefore a claim for disability discrimination brought under Title VII cannot survive."). Therefore, to the extent Mr. Zangara asserts independent claims under Title VII, they cannot proceed.

*New Jersey state law*

Mr. Zangara's New Jersey state law claims may not proceed for the same reasons his ADA claims cannot proceed. The New Jersey Law Against Discrimination (NJLAD) is generally interpreted in the same way as Section 504 of the Rehabilitation Act and the ADA. *See Chisolm v. McManimon*, 275 F.3d 315, 324 n.9 (3d Cir. 2001) (citations omitted) ("Moreover, New Jersey courts typically look to federal anti-discrimination law in construing the NJLAD. Therefore, we will confine our discussion to the ADA with the understanding that the principles will apply equally to the Rehabilitation Act and NJLAD claims."); *J.C. Rowan Univ. Sch. of Osteopathic Med.*, 2018 WL 447615, at *5 (D.N.J. Jan. 17, 2018) (noting that "[t]he Third Circuit, however, has noted how the standards for determining a violation of Section 504 of the Rehabilitation Act and NJLAD are the same as those under the ADA"); *K.N. v. Gloucester City Bd. of Educ.*, 379 F. Supp. 3d 334, 345 n.8 (D.N.J. 2019) ("The Court notes that both Section 504 and NJLAD are, for the most part, interpreted consistently with the ADA."); *Chin v. Rutgers*, 697 F. App'x 751, 752-53 (3d Cir. 2017) (analyzing ADA and NJLAD claims together when a student sought extensions to the school's policy to take and pass USMLE Step exams).

Additionally, the NJLAD's regulatory language mirrors that in the ADA's regulations with respect to examinations. Both require that examinations are offered "in a place and manner accessible to persons with disabilities." 28 C.F.R. § 36.309(a); N.J. Admin. Code § 13:13-4.12(9). *See also* 28 C.F.R. § 36.309(a) (Requiring that "when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level"); N.J. Admin. Code § 13:13-4.5 (same). Indeed, Mr. Zangara notes that the NJLAD and ADA have "equivalent" regulations. DI 59 at 47. Therefore, because Mr. Zangara cannot state a claim under the ADA, he similarly cannot proceed under the NJLAD.

Moreover, the New Jersey Civil Rights Act (NJCRA) is "a state law analogue" to 42 U.S.C. § 1983. *Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014); *Lozano v. New Jersey*, 9 F. 4th 239, 244 (3d Cir. 2021). "[C]ourts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Zisa v. Haviland*, 2020 WL 1527862, at *8 (D.N.J. Mar. 31, 2020) (quoting *Velez v. Fuentes*, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016)). Section 1983 "'is not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Therefore, the NJCRA similarly does not create substantive rights. *See also Perez*, 94 A.3d at 212 (noting that the Governor who signed the bill into law said it was not intended to "create any new substantive rights"). Because Mr. Zangara

impact claims have "historically" been used in the context of Title VII, "courts have exp[a]nded it to the ADA." DI 59 at 16. Moreover, he argues that because "the standards of liability are the same" under Titles I, I, and III of the ADA, he may assert a disparate-impact claim under the ADA for NBME's scoring methodology. DI 59 at 23; DI 79 at 16. He then applies a Title VII disparate-impact framework to the NBME's exams, arguing that the exams are disproportionately failed by students with disabilities and are unrelated to job performance. DI

---

cannot plausibly allege that his substantive rights were violated under any other law, he is unable to state a claim under the NJCRA.

Additionally, there are likely independent reasons Mr. Zangara's state law claims cannot proceed. The NJLAD does not apply "extraterritorially to conduct in other states," *see Archut v. Ross Univ. Sch. of Veterinary Med.*, 2012 WL 5867148, at *12 (D.N.J.), *aff'd*, 580 F. App'x. 90 (3d Cir. 2014). Here, the NBME argues that the alleged discriminatory conduct — scoring the exam — took place in Pennsylvania, and therefore this statute does not apply to Mr. Zangara's claims. DI 71 at 12-13. Further, a private cause of action under the NJCRA may only be pursued against those "acting under color of law." N.J. Stat. Ann. § 10:6-2; *Perez*, 94 A.3d at 204. The NBME argues that Mr. Zangara has not alleged that it is a state actor such that it meets this requirement, nor can it. DI 71 at 14. *See Boggi v. Med. Rev. & Accrediting Council*, 415 F. App'x 411, 414 (3d Cir. 2011) (finding that plaintiff's allegations did not show the NBME "engaged in any conduct that could be considered state action for purposes of § 1983 liability"). We need not decide whether these present independent reasons for dismissing Mr. Zangara's New Jersey state law claims because they cannot proceed for same reason as his ADA claims cannot proceed.

For the aforementioned reasons, we will focus our analysis on Mr. Zangara's ADA claims.

[5] This document is Mr. Zangara's opposition to a motion to dismiss filed by NBME before this case was transferred to the Eastern District of Pennsylvania. When the case was transferred, NBME's motion to dismiss was denied as moot. DI 67. NBME then filed the present motion to dismiss. DI 71. In response, we gave Mr. Zangara the opportunity to either file a new opposition to the motion to dismiss, or to indicate he wished to incorporate the arguments raised in his previous opposition. DI 75. Mr. Zangara filed an opposition summarizing his arguments (DI 79) and also indicated he wished to incorporate the arguments he made in his previous opposition (DI 59). We will therefore consider the arguments raised by Mr. Zangara in both DI 59 and DI 79.

[6] We use the CM/ECF pagination for this document.

59 at 18-23; DI 79 at 12-16.  Importantly, unlike typical ADA cases brought against test-administering organizations, Mr. Zangara is not seeking accommodations on any of the NBME exams.  DI 59 at 20; DI 79 at 14.[7]

The NBME moves to dismiss Mr. Zangara's complaint, arguing that a specific provision in Title III of the ADA governs Mr. Zangara's claim.  DI 71 at 9-11.  This provision requires that exams made for licensing and professional purposes are "accessible" to those with disabilities — a requirement accomplished by granting qualified individuals reasonable accommodations on the exams.  *Id*.  Because the appropriate way to make NBME tests "accessible" to those with disabilities is through reasonable accommodations — and Mr. Zangara has chosen not to pursue this path — the NBME argues Mr. Zangara has failed to state a claim.  *Id*.

## II.     Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678).  At the motion to dismiss stage, a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d

---

[7] In his oppositions, Mr. Zangara cites a line from his previous briefing that states: "Mr. Zangara is not seeking testing accommodations in this lawsuit, on the USMLE or any other test that NBME develops or administers."  DI 29 at 1 n.1.

Cir. 2008)).  Because Mr. Zangara is proceeding pro se, we construe his allegations literally.  *See Walker v. Phelan Hallinan Diamond & Jones*, 269 F. Supp. 3d, 621 (E.D. Pa. 2017).

### III. Analysis

Mr. Zangara argues that the way the NBME scores its exams violates the ADA.  DI 51; DI 59; DI 77; DI 79.  Claims that NBME examinations violate the ADA are governed by Title III of the ADA and specifically by Section 309, *see* 42 U.S.C. § 12189.  *See Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 154-55 (3d Cir. 1999) (analyzing whether a different section of Title III of the ADA governs examinations and concluding that because the "specific governs the general," this statute controls); *Patel v. Educ. Comm'n for Foreign Med. Graduates*, 2023 WL 3336646, at *2 (3d Cir. May1 10, 2023) (non-precedential) (reiterating *Doe's* holding).  The statute requires that:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189.  Moreover, the associated regulation states that a private entity offering an examination covered by this statute must ensure that:

> The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (expect where those skills are the factors that the examination purports to measure).

28 C.F.R. § 36.309(b)(1)(i).

The requirement that the NBME must offer exams "in a place and manner accessible" to individuals with disabilities, and that it "best ensure" that the tests reflect an individual's "aptitude or achievement level," is generally met by offering qualified individuals reasonable

8

accommodations. *See Katz v. Nat'l Bd. of Med. Exam'rs*, 751 F. App'x 231, 239 (3d Cir. 2018); *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 253-54 (3d Cir. 2020). Reasonable accommodations may include, for example, additional testing time, *see Ramsay*, 968 F.3d at 254-56; *Kitchens v. United States Med. Licensing Examination*, 2023 WL 7230400, at *16-17 (E.D. Pa. Oct. 31, 2023), equipment to accommodate a visual impairment, *see Mahmood v. Nat'l Bd. of Med. Exam'rs*, 2013 WL 553085, at *2 (E.D. Pa. Feb. 14, 2013); providing a quiet setting and short breaks, *see Rawdin v. Am. Bd. of Pediatrics*, 582 F. App'x 114, 117 (3d Cir. 2014), or seating near the restroom, *see Doe*, 199 F.3d at 150.[8]

Accessible does not, however, mean "exactly comparable." *Doe*, 199 F.3d at 156. In *Doe*, the plaintiff claimed that the NBME violated the ADA by annotating his scores to reflect that he received testing accommodations. *Id*. at 148. These annotations, he argued, "unfairly call[ed] into question the validity of his scores" and thus denied him the opportunity to take the examination "in a place and manner accessible to him." *Id*. at 156. Disagreeing, the Third Circuit noted that:

> [Plaintiff] would have us hold that the phrase "in a manner accessible" includes by implication the requirement that the resulting scores be declared psychometrically comparable to the scores of examinees who take the test under standard conditions. However, neither the language of the statute nor the regulation interpreting it sets forth or implies such a requirement.

*Id*. at 156. Instead, the ADA requires changes to examinations that remove certain "features" of tests, so that individuals with disabilities "may take the examinations without those features that disadvantage them." *Id*.

---

[8] Plaintiffs did not always receive all of the relief requested in these cases. However, the accommodations listed reflect either those that were agreed to before testing or that a court ordered.

Mr. Zangara's central argument is that the NBME's scoring methodology violates the ADA because the exams of students with disabilities are compared to those of students who do not have disabilities. DI 51 ¶ 84. However, as the Third Circuit found in *Doe*, there is no requirement that exams or the resulting scores of individuals with disabilities be "exactly comparable" to those without disabilities. Rather, the ADA requires removal of certain testing "features" that disadvantage students with disabilities. Mr. Zangara, however, does not wish to partake in this process by requesting reasonable accommodations. DI 59 at 20; DI 79 at 14. *See Katz*, 751 F. App'x at 239 (finding the NBME's policies for allowing individuals to apply for reasonable accommodations complied with the ADA and that plaintiff failed to show these procedures were inadequate "especially when he did not even avail himself" of them).

Instead, Mr. Zangara proposes requiring that the NBME implement an entirely new grading system that bars comparisons "to any current or prior testing candidate" when determining passing scores. DI 51 ¶ 834. On the record of this case, this proposal exceeds the relief appropriate under the ADA. Courts have declined to mandate examination accommodations when individuals have asked for far less sweeping changes. *Rawdin v. Am. Bd. of Pediatrics*, 985 F. Supp. 2d 636, 655 (E.D. Pa. 2013), *aff'd*, 582 F. App'x 114 (3d Cir. 2014) (finding requested accommodation of an open book exam would "alter and lower the standard for certification" and thus was not reasonable); *Florida Bd. of Bar Exam'rs re S.G.*, 707 So.2d 323, 324-25 (Fla. 1998) (holding that modifying the scoring of exams is not required by the ADA when plaintiff requested her scores on two parts of the bar exam taken at separate administrations be averaged); *Jacobsen v. Tillmann*, 17 F. Supp. 2d 1018, 1026 (D. Minn. 1998) (finding that the request to waive the math portion of the Minnesota's teacher certification exam was an "unreasonable modification"); *Falchenberg v. New York State Dep't of Educ.*, 642 F.

10

Supp. 2d 156, 162-63 (S.D.N.Y. 2008) (declining to exempt plaintiff from dictating spelling and grammar on teacher certification exam because an examinee's "ability to spell, punctuate, capitalize and paragraph is an inherent part" of the exam). *See also Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 89 (2nd Cir. 2004) (finding that asking the NBME to depart from its procedures for granting testing accommodations "would be altering the substance of the product because the resulting scores would not be guaranteed to reflect each examinee's abilities accurately" and thus was not required under the ADA).

      Mr. Zangara advances a disparate impact theory. DI 59 at 16-23; DI 79 at 7-18. He argues that disparate impact claims are cognizable under the ADA. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (noting that disparate impact claims are cognizable under Title I of the ADA in the employment context); *E.E.O.C. v. Kronos, Inc.*, 620 F.3d 287, 296 (2010) (3d Cir. 2010) (same). Additionally, at least one district court has held that disparate impact claims are cognizable under **Title II** of the ADA, which prohibits discrimination in the "services, programs, or activities of a public entity." 42 U.S.C. § 12132; *Doe 1 v. Perkiomen Valley Sch. Dist.*, 585 F. Supp. 3d 668, 688 (E.D. Pa. Feb. 7, 2022) (finding a disparate impact claim cognizable when students with disabilities sought to block an optional masking policy in school). Mr. Zangara argues this allows him to state a disparate impact claim related to the NBME's exams under **Title III** of the ADA because "the standards of liability are the same under titles I, II, & III of the ADA," *see* DI 59 at 23; DI 79 at 16. [9]

---

[9] Mr. Zangara cites to a number of cases to support his proposition. DI 59 at 14-15. However, these cases generally hold that we should construe claims under the ADA and the Rehabilitation Act together, not that Titles I, II and III of the ADA are interchangeable. Mr. Zangara additionally points us to Department of Justice supplementary information, which notes that Title III is a "useful guide for determining what constitutes discriminatory conduct by a public entity in testing situations," which is governed by Title II of the ADA. DI 59 at 15.

We disagree. The ADA's titles address disability discrimination in different contexts. Generally, Title I[10] governs employment, Title II[11] applies to public entities, and Title III relates to public accommodations and services operated by private entities. *See* 42 U.S.C. § 12101 et seq. *See also Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 118 (3d Cir. 1998) (noting that Title I and Title III of the ADA have "significant disparities in coverage, remedies, and construction"). When a person alleges disability discrimination in the context of NBME exams, the Third Circuit has determined that Section 309 in Title III, *see* 42 U.S.C. § 12189, is the appropriate law to follow. *Doe*, 199 F.3d at 155. We are not aware of any decisions applying a disparate impact framework in the context of examinations under Section 309.

Instead, Section 309 mandates accessibility, which entails the removal of discriminatory "features" of the exams. *Doe*, 199 F.3d at 156. It does not exempt students with disabilities

---

However, this does not change our conclusion that the provisions of Title III of the ADA, and specifically under section Section 309, *see* 42 U.S.C. § 12189, govern this case.

[10] Title I states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." § 12112(a). It further defines "[c]overed entity" as "an employer, employment agency, labor organization, or joint labor-management committee." § 12111(2).

The NBME does not employ Mr. Zangara. Mr. Zangara notes that residency programs use the USMLE to determine admission to their programs and argues the NBME should therefore be considered an "employer." DI 59 at 38. We have not identified authority defining "employer" so broadly under the ADA and decline to do so now. *Id.*

Moreover, Title I of the ADA typically applies in more traditional definition of employer-employee relationships. *See Clackamas Gastroenterology Assocss. P.C. v. Wells*, 538 U.S. 440 (2003) (looking to common law to define employee under Title I of the ADA); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3d Cir. 1998) (noting that an employee of a hospital would be covered under Title I of the ADA while someone who is "more in the nature of an independent contractor" is covered by Title III).

[11] Mr. Zangara argues that the NBME should be considered "state and federal actors." DI 59 at 33-38. But lack a basis in this record to conclude that the NBME is anything but a "private" entity. DI 51 ¶ 3.

12

from exams or their scoring methodologies. Rather, it allows for qualified individuals to receive reasonable accommodations.

We note that our holding is specific to Mr. Zangara's claims and does not purport to make broader assertions about what claims may be brought under Title III of the ADA. Mr. Zangara's claim turns on the assertion that students with disabilities should not be compared to students without disabilities in determining passing scores, which some examinees inevitably will not achieve. This cuts to the very heart of examinations and their grading mechanisms, which inherently require comparisons between students. For this reason, we find that Mr. Zangara's allegations are not consistent with the ADA's requirements for examinations. Thus, Mr. Zangara has not stated a plausible claim.

### IV.   Conclusion

For the reasons explained, we grant the NBME's motion to dismiss (DI 71). We also deny Mr. Zangara's "Order to show cause / Temporary Restraining Order / Motion for Preliminary Injunction" (DI 77). [12] Further, Mr. Zangara's complaint will be dismissed with

---

[12] Because we find that Mr. Zangara has failed to state a claim upon which relief can be granted, we also deny his motion for a preliminary injunction. When determining whether to grant a preliminary injunction, the court may consider four factors:

1. A reasonable probability of success on the merits of the claim for which injunctive relief is sought;
2. An irreparable harm in the absence of preliminary injunctive relief;
3. A balancing of the equities associated with the possibilities of harms to other interested persons resulting from the grant or denial of injunctive relief; and
4. An assessment of the public interest.

*Transcon. Gas Pipe Line Co., LLC v. Pennsylvania Env't Hearing Bd.*, 108 F.4th 144, 150 (3d Cir. 2024).

The first two factors are required in order to issue a preliminary injunction. *See Transcon. Gas Pipe Line*, 108 F.4th at 150 ("The first two considerations . . . are elements because the failure of the moving party to make either of those threshold showings is fatal to the issuance of a preliminary injunction."); *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir.

prejudice. Mr. Zangara has already had the chance to amend his complaint and had the opportunity to further explain his position at oral argument. DI 51; DI 86. He did not urge us at oral argument to allow him to amend his complaint. DI 87. Additionally, we dismiss Mr. Zangara's complaint for reasons central to his legal argument, which could not be cured with amendment. Thus, we find that amendment would be futile and therefore dismissal with prejudice is appropriate. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (noting that amendment is permitted unless it would be "inequitable or futile"); *Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 559-60 (E.D. Pa. 2019) (same).

---

2017) (finding that "a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits"); *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018) (noting in the context of a preliminary injunction that "[t]he first two factors are prerequisites for a movant to prevail"). Therefore, we will also deny Mr. Zangara's motion for a preliminary injunction.